Mr. Justice Thacher
delivered the opinion of the Court.
This was an indictment preferred in the Circuit Court of Smith county against the plaintiffs in error for the murder of a slave, the property of the plaintiff in error, Kelly, which, upon trial, resulted in a verdict of manslaughter in the first degree.
We shall proceed to notice such points.made by the plaintiffs in error which we deem to be at all in doubt.
The first objection insisted upon is, that the caption of the indictment does not show that the-Court was held in the place designated by law. It shows that the Circuit Court, at which the indictment was found, was held for the county of Smith, and at the Court-house in the town of Raleigh. The town of Raleigh, in Smith county, was incorporated by act of the legislature 1838, which is sufficient to authorize this Court to take notice of it as a place within that county. 9 Yerg. R. 381, Hite v. State. By the act of 1836, the county site for the public buildings of Smith county was located in *525 what is now a portion of the town of Raleigh. We think, therefore, the description in the caption is made with reasonable certainty, and with as much so as can be required to designate the place where the Court was held.
It is objected to the validity of the indictment, that numerical figures'are used in it to express numbers and dates. The rule in England restraining the expression of numbers by figures, was not a regulation of the Common Law, but made by a statute which has since been repealed. There must be certainty in an indictment in order to furnish a bar to another prosecution for the same offence. But figures are a part of the English'language, and are admissible in indictments. 3 Vermont R. 431, State v. Hodgden. If, however, the figures are illegible, the indictment is bad for uncertainty.
The objection that the Court below erred in dismissing the sheriff from the duty of summoning tales jurors, we think is ineffectual. Any such act or order was void, and it is enough that the record shows the jurors to have been summoned by the deputy sheriff, which, in the eye of the law, is the act of the sheriff himself.
Several points have been urged, growing out of the refusal of the Court below to charge the jury as requested by the prisoners’ counsel.
1st. The Court below declined to charge the jury as follows ; — • “ There being no system of domestic slavery known to the Common Law of England, the relation of master and slave known in this State, as well as that between slave and overseer, not having existed in England, there is nothing in the Common Law on the subject of murder that has strict and complete application to a case of killing as arising from the chastisement of a slave by his master or overseer, or both.” This instruction, wó think, was properly refused. The system of slavery as controlled by the laws of this State, is peculiar, and differs in some respects from the system in other States of the Union.' It is unlike the system as it existed among the Jews, the Greeks, the Romans, and differs materially from the villanage of ancient England. Among the Jews, the death of the slave by whipping, under the hand of the master,' was merely punishable by a fine. Exodus, xxi. 20, 22. Among 'the Greeks, the young Spartans were occasionally compelled to kill all the Helots they *526 could meet, in order to prevent their great increase. Plutarch, Life of Lycurgus. Among the Romans, there was an uncontrolled power by the owner over the life of his slave. Just. Inst. B. 1, tit. 3, s. 3*. In ancient England, the life and limb of the slave were protected against his master, because, as Lord Coke says, 127 a, he was subject to the King, — “ Vita et membra sunt in manu regisJ’ Yet in several other respects his condition did not at all resemble the condition of the slave here. But in this State the killing of the slave by the master feloniously is murder. Walker, R. 83, State v. Jones. By the statute H. & H. 162, s. 28, the master or any other person entitled to the service of the slave shall not inflict upon such slave cruel or unusal punishment, under the penalty, upon conviction thereof, of a fine of five hundred dollars. In this State the master is therefore, under the above circumstances, liable to an indictment for a battery committed upon bis slave. In the absence of similar legislation, it has been elsewhere otherwise decided. 2 Dev. R. 263, State v. Mann; 5 Rand. R. 678, Commonw. v. Turner. But anywhere in this country, the attempt to take the slave’s life, by the master or any other, feloniously, may rightfully be resisted by him. 1 Dev. & Batt. R. 171, State v. Will. Now, by the Common Law of England, masters were allowed to punish their servants with moderation. 1 Hale’s P. C. 454. What was moderation at Common Law was a question of fact for a jury, who might be masters, and here, what is a cruel and unusual punishment, is likewise in all cases a question of fact for a jury, who most generally are slave owners. It is not contended that a greater degree of punishment may not be inflicted here by the master upon his slave, than by the master upon the servant at Common Law, because such here may be usual from necessity; but the same general principle of law holds in both cases, so that the Court did not err in refusing the instruction.
2d. The Court below declined to charge the jury as follows :— iC In determining whether the act of killing was or was not murder, if the jury find, from the evidence, that the defendants were in a state of serious intoxication, they are entitled to regard this fact as elucidatory of the point of intention, as evidence more or less strong, according to their view of the real circumstances of the case, as *527 proof of the absence of that premeditated design, required by our statute in its first description of murder, as an indispensable ingredient of murder.” As, in this case, the finding of the jury was manslaughter, no injury accrued to the prisoners from the denial of the charge by the Court. It is true that our statute, H. & H. 722, s. 2, has enacted that no person can be punished for an offence committed in a state of insanity ; but, in doing so, it has done no more, as all writers on criminal law show, than to re-enact the Common Law. It is to be noticed that the instruction under review has reference only to a single instance of intoxication, and has no reference to well defined and unmistakable insanity produced by a long continued or excessive use of intoxicating stimulants. Legal writers, from the earliest times to the present, agree that mere drunkenness is no extenuation or excuse for. crime in the view of the law. “ He who is guilty of any crime whatever, through drunkenness, shall be punished for it as much as if he had been sober.”, 1 Hawk. P. C. 3. “ A drunkard,” says Lord Coke, “is volun-tarius damon, and hath no privilege thereby.” Judge Story, commenting on the same subject, says : “ If persons wilfully deprive themselves of reason, they ought not to be ^excused one crime by the voluntary perpetration of another.” In this connexion, it is insisted by counsel that as our statute in one of its definitions of murder declares that it must be perpetrated from “ a premeditated design to effect the death of the person killed, or some other person,” and as intoxication “ steals away the brain,” such is a circumstance to infer the want or absence of a premeditated design to commit a felonious act. The fact of the party being intoxicated, has, indeed, been holden to be a circumstance proper to be taken into consideration, where the sole question is, whether an act was premeditated, or done only with sudden heat and impulse. The same may as truly be said of the passion of anger, or any other excitement arising from sudden provocation or peculiar circumstances. But how slight that consideration should be in the instance of intoxication, is readily conceived from the as equally just presumption, that the design to commit a crime may have previously existed or been contemplated, and the intoxication have been employed “to screw the courage to the sticking place.” Hence it is, that *528 the law discriminates between the delusion of intoxication and the insanity which it may ultimately produce. For if the mere fit of drunkenness is always to be held as an excuse for crime, there is at ^once established a complete emancipation from criminal justice. And, generally, to sustain a defence on the ground of insanity, a comparison of the best authorities concludes, that it.must be clearly proved, that, at the time of committing the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or, if he did understand them, that he did not know he was doing what was wrong.
In looking through the record, we observe that in the interval, after the arraignment and before the trial, two motions were made in behalf of the State, and in the absence of the prisoners. These were motions to quash the special venire facias, and for an alias venire facias ; and they were overruled by the Court. These proceedings wrought no injury to the defendants, as they did not preclude them from preferring similar motions at the trial, had they so desired, nor does it appear but that the two motions were overruled on account of the absence of the prisoners.
But it does not appear in the record that the prisoners were personally in Court at the time of pronouncing the sentence. The presence of the prisoners is considered absolutely necessary both in England and in this countiy, in all cases where judgment of corporal punishment is to be pronounced. 1 Chit. C. L. 695; 12, Wend. 344; 7 Cowen, 525.
Finally, the sentence or judgmentuf the Cdurt below is defective in not setting forth the time from whence the commencement of the imprisonment shall date. This is, generally, from the day of the •sentence.
For the two errors just pointed out, the judgment of the Court below is reversed, without disturbing the vérdic’t, and the cause remanded, with directions to the Court below to pronounce its judgment in accordance herewith, having first duly inquired of the defendants whether they have anything further to urge why its judgment should not then be pronounced.